Mack M. KIRKENDALL, Petitioner,

v.

James B. BUSEY, Administrator, Federal Aviation Administration, and the National Transportation Safety Board, Respondents.

No. 89–8982.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1991.

Samuel W. Wethern, Atlanta, Ga., for petitioner.

Eddie L. Thomas, Office of Asst. Chief Counsel, Federal Aviation Administration, Atlanta, Ga., Joseph A. Conte, Atty., Washington, D.C., for respondents.

Before CLARK and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

**655**

## PETITION FOR REHEARING

### PER CURIAM:

On petition for rehearing the Court withdraws the opinion published in this case on November 1, 1990 and the following opinion and judgment is issued in lieu thereof:

This is a petition for review of an order of the National Transportation Safety Board (NTSB) affirming the Federal Aviation Administration's (FAA's) revocation of a commercial pilot's first-class airman medical certificate pursuant to 49 U.S.C. App. § 1429.

### I. STATEMENT OF THE CASE

On May 31, 1988, the Administrator of the FAA ordered the emergency revocation of Mack Kirkendall's first-class medical certificate, which certificate is required for a pilot to act as a pilot in command of a commercial air carrier. The revocation was ordered because of petitioner's alleged "disturbance of consciousness" of undetermined etiology of December 30, 1986. Kirkendall filed a notice of appeal with the NTSB and, accordingly, the administrator filed its complaint with the NTSB. An amended complaint asserted as an additional basis for revocation a December 9, 1987 incident of Kirkendall's loss of consciousness.

A two-day hearing was held before an administrative law judge (ALJ) who rendered an oral opinion (as required by the regulations) affirming the revocation and stating that the FAA proved by a preponderance of the evidence that Kirkendall experienced two disturbances of consciousness without satisfactory medical explanation of the cause. Kirkendall then appealed to the NTSB, which adopted the ALJ's findings and affirmed the ALJ's opinion. The decision affirming the revocation relied on the provisions of Federal Aviation Regulation (FAR) 14 C.F.R. § 67.13(d)(2)(i)(b). This regulation provides that a first-class medical certificate cannot be held by a person who has "an established medical history or clinical diagnosis of a disturbance of consciousness without satisfactory medical

explanation of the cause." The NTSB, in affirming the ALJ's ruling, expressly relied upon a determination that each of the above-mentioned events, which occurred nearly 12 months apart, demonstrated "an established medical history or clinical diagnosis of a disturbance. of consciousness without satisfactory medical explanation of the cause."

## II. FACTS

Petitioner has been an aircraft pilot for more than 30 years and employed by Delta Air Lines for more than 20 years; he has been a Delta captain for 12 years. After an incident on December 30, 1986, he ceased flying pending medical evaluation and was furloughed. On that date, petitioner returned home to Atlanta after flying a three-day trip. He testified that he was very tired and hot and was suffering from a severe sinus infection and that he had a fever and he went to bed. His roommate, Ms. Burgess, also testified that she observed Kirkendall on his bed, his face drooping a little, making jerking movements, and talking "gibberish." She also testified that she observed some foaming at the mouth and that he looked "putty colored" for a period of almost 10 minutes.

On January 9, 1987, Kirkendall was examined by a board certified neurologist, Dr. Bernstein, who took a history from him and his roommate and performed tests. Dr. Bernstein testified that these tests showed normal results. He opined that Kirkendall had experienced four grand mal seizures. At Kirkendall's request, Dr. Bernstein referred him to another neurologist, Dr. Epstein of Emory Hospital, for a second opinion. Several months later, Dr. Epstein examined him and concluded that there was no evidence of grand mal seizures and that Kirkendall had experienced a convulsive syncope (not a seizure) caused by a combination of stress factors.

Thereafter, Kirkendall underwent testing at the Mayo Clinic. He was evaluated there by Dr. Hodgson, whose report stated that the examination was essentially negative and there was no objective findings of any disqualifying or disabling medical or neurological condition. The administrator then requested a specialist in neurology, Dr. Soll, to evaluate Kirkendall's medical records and issue a report. This report, which is part of the record, stated that he was "unable to recommend airman medical certification of any class on the basis of information provided. I believe that [Kirkendall] did suffer a significant disturbance of consciousness on December 30, 1986, and this very likely was a seizure."

Dr. Thomas Auth, a board-certified, practicing neurologist, testified for the administrator. He testified that he specializes in sleep disorders, seizures, evoked potentials and blackouts. At the administrator's request, he reviewed Kirkendall's FAA medical records. These records included all of the reports filed by the other medical specialists above-referred to. He testified that Kirkendall had a disturbance of consciousness on December 30, 1986. He defined consciousness as a state of alertness in which one is able to receive sensory stimuli, integrate them and respond, including, if necessary, motor or verbal response.

Dr. Auth also testified that he did not believe that there was a satisfactory medical explanation for the cause of the 1986 disturbance of consciousness.[1]

The second episode occurred on December 9, 1987 while Kirkendall was in a classroom at a vocational school where he was taking a masonry course. He testified that as he was trying to retrieve a pencil he had dropped, his chair slipped from under him

---

1. Dr. Auth's testimony follows:
   Q  Looking at the entire report and all the information that you have gathered, is there a known medical explanation for the causes of the loss of consciousness or the disturbance of consciousness that the Respondent has had in this case?
   A  I don't believe there is.
   Q  And why did you come to that conclusion?

A  Because despite having a serious medical work-up here by his own treating physicians here in Georgia and going up to Mayo Clinic, the consensus I see of this is that there's still—despite all the EEG's and the blood tests and the CT scans and the MR scan, endocrine test, and metabolic test, blood sugar test, and everything, that still no established etiology has been defined.

and he fell sideways, hitting his jaw on the desk and his hip and his head on the floor. Kirkendall's instructor found him lying on the floor and he summoned the school nurse, Ms. Cox. She testified that he could not answer questions regarding his identity or his whereabouts. The nurse testified that Mr. Kirkendall was disoriented, that he did not know his instructor's name and he did not know his own date of birth. Ms. Cox testified that he did not know where he was at the time. She also testified that he had some sputum on the side of his mouth and that it took five to ten minutes for him to become alert after she arrived in the room. There was no testimony that Kirkendall had lost consciousness.

Ms. Cox testified that she had called an emergency ambulance, but that Kirkendall refused to go to a hospital and that he insisted on driving himself home rather than letting someone else perform this service for him.

## III. ISSUE

Was there substantial evidence to support the Board's finding of a disturbance of consciousness without satisfactory medical explanation of the cause?

## IV. DISCUSSION

Under the Federal Aviation Act, the FAA administrator has the power not only to issue medical certificates, but also to amend, modify, suspend, or revoke those certificates. 49 U.S.C.App. § 1429. When exercising this power, the administrator may reexamine an airman after issuance of a certificate to verify continued qualification. If, after such examination, the administrator determines that safety in air transportation and the public interest require, he may issue an order amending, modifying, or suspending, or revoking an airman's certificate. 49 U.S.C.App. § 1429.[2]

There is no dispute that the administrator has the burden of proof in a Section 609

certificate proceeding. 49 C.F.R. § 821.32. Kirkendall contends that the NTSB erroneously placed the burden of proof concerning Kirkendall's medical qualification on him. He maintains that he was improperly required to provide a convincing and satisfactory medical explanation for the two events rather than simply to produce facts to rebut the FAA's prima facie case. Kirkendall claims that the FAA must establish two elements to support a revocation of a medical certificate under 14 C.F.R. § 6713(d): (1) That the airman experienced a disturbance of consciousness, and (2) that the disturbance of consciousness was without satisfactory medical explanation as to the cause.

We conclude that the administrator carried his burden of proof of both elements as to the December 30, 1986 event but failed to do so with respect to the December 9, 1987 episode.

## V. BACKGROUND

It is clear that the administrative law judge, whose findings of fact and conclusions were adopted by the Board, clearly based his finding of Kirkendall's lack of medical qualification on the finding of two separate and distinct losses of consciousness within a year of each other. The ALJ stated: "... There is clearly evidence to show that there was a loss of consciousness on two occasions and that there is no satisfactory medical explanation for the cause."

The law judge also stated:

... And although the administrator has the burden of proof, under this one particular section, unless the respondent comes back with a convincing satisfactory medical explanation as to a cause for *both of these instances of unconsciousness*, we have a failure to meet the qualifications in the regulations. (emphasis added.)

The Board, in affirming the law judge's decision stated:

---

2. 49 U.S.C.App. § 1429 is the codification of Section 609 of the FAA Act of 1958. When the FAA takes action to revoke, suspend, amend or

modify an airman's certificate, that action is usually referred to as "a Section 609 certificate action." We shall refer to it in that manner.

The Board's evaluation of the record causes us to agree with the law judge that respondent had *two episodes involving a spontaneous disturbance of consciousness, during each of which he displayed at least a modest amount of convulsive symptoms,* and that there has been no satisfactory medical explanation of the cause or causes.[3] (emphasis added.)

The Board then stated: "We find that the diagnosis does not permit us to evaluate the risk of recurrence, *especially in light of the fact that there were two events within one year of each other.*" (emphasis added.)

Thus, it is apparent that we must determine whether there is sufficient evidence in the record to support the Board's finding (1) that there were two episodes of a "disturbance of consciousness," and (2) if so, was there a "satisfactory medical explanation for the cause?"

### (A) *The December 30, 1986 Incident*

■ As noted above, Kirkendall testified that on December 30, 1986, he returned home to Atlanta after flying a three-day trip. He testified that he was very tired and hot and was suffering from a severe sinus infection and he had a fever and he went to bed. He also testified that at this time he was under severe stress on account of a divorce and because of problems with the Internal Revenue Service. His roommate, Ms. Burgess, also testified that she observed Kirkendall on his bed, his face drooping a little, making jerking movements, and talking "gibberish." She also observed some foaming at the mouth and that he looked "putty-colored, and these conditions continued for a period of eight to ten minutes." Ms. Burgess also testified that she had told Dr. Burnstein that Kirkendall's body was rigid or tense or stiff and that she tried to get his attention but he would not talk to her and that his eyes "... kind of rolled a bit." She said that she had told Dr. Burnstein that his eyes were glassy or dazed.

Based on this evidence and the proof of Kirkendall's "medical history and clinical diagnosis of ... a disturbance of consciousness without a satisfactory medical explanation of the cause" petitioner cannot seriously argue that there was a lack of proof of a "disturbance of consciousness."

We then consider whether the FAA carried its burden of proving a want of a satisfactory medical explanation for the cause.

■ We are satisfied that the Board carried its burden of establishing the lack of a satisfactory cause for the incident. Dr. Auth's testimony that he did not believe that there was a satisfactory medical explanation for the incident was subject to vigorous cross-examination by respondent. However, it satisfied the administrative law judge and we cannot fault the Board for accepting the ALJ's finding in this respect.

### (B) *The December 9, 1987 Episode*

■ As noted above, no witness testified that on December 9, 1987, Kirkendall had a disturbance of consciousness. From the testimony given by the several witnesses, it is clear that in an ordinary civil trial, a jury might well infer that such an event happened. However, the only evidence in this record, is that by Kirkendall and Ms. Cox, the certified practical nurse employed by the vocational school. Kirkendall testified that while sitting at a desk in a classroom, he leaned forward to pick up a pencil which had dropped to the floor and in doing so his chair slipped from under him and he fell, hitting his jaw on a desk and then falling back and striking his head on the floor. Ms. Cox testified that Kirkendall could not answer questions, that Kirkendall was disoriented, that he did not know his instructor's name or his own date of birth. She also testified that he did not know where

---

**3.** *In Petition of McHenry,* Order EA 1982 (1984), following the remand by this Court of *McHenry v. Bond,* 668 F.2d 1185 (11th Cir.1982), the Board addressed the problem of what constitutes a "satisfactory medical explanation." The Board there stated that "such explanation must be (1) the kind of medical explanation that permits a reliable assessment of the risk of its recurrence, and (2) the risk must be within acceptable limits for aviation safety."

he was at the time and that he had some sputum on the side of his mouth. She testified that it took five to ten minutes for him to become alert after she arrived at the scene. Kirkendall did not see a physician after this occurrence. Thus, there is no medical evidence either as to the actual existence of a disturbance of consciousness or as to the cause.

The appropriate FAA regulations require that a disturbance of consciousness and a lack of a "satisfactory medical explanation of the cause" must be based on the "medical history or clinical diagnosis of the patient." [4]

Since there was no testimony either by an attending physician or a medical expert who reviewed Kirkendall's medical history, we are unable to conclude that as to the December 9, 1987 incident, there was even a disturbance of consciousness. It would be entirely different had a medical expert at the hearing reviewed the case history of the incident of December 9, 1987 and had given his expert opinion as to whether there was a disturbance of consciousness and whether, if so, there was a satisfactory medical explanation for the cause.

### VI. CONCLUSION

■ We must therefore remand the case to the NTSB for further consideration. The Board may, if it deems it appropriate, consider any further evidence that may be available as to the 1987 event and it may also determine whether, assuming there was no adequate proof as to that event, the proof of the 1986 event alone was sufficient to support the administrator's action in revoking petitioner's medical certificate.

The Board's decision is VACATED and the case is REMANDED in conformity with this decision.

---

**4.** FAA § 67.13 provides as follows:
*First-class medical certificate.*
  (d) *Mental and neurologic —*
  (2) *Neurologic.*

(i) No established medical history or clinical diagnosis of either of the following:
  (b) A disturbance of consciousness without satisfactory medical explanation of the cause.